**UNITED STATES of America,
Plaintiff,**

v.

**1) Efrain ROBLES–MENDOZA, 2) Heriberto Echevarria, 3) German Heger–Fernandez, 4) Daniel Perez–Vazquez, Defendants.**

**No. CRIM. 98–0296CCC.**

United States District Court,
D. Puerto Rico.

March 1, 2000.

---

Guillermo Gil, U.S. Attorney, Desireé Laborde–Sanfiorenzo, Assistant U.S. Attorney, for Plaintiff.

Vilma María Dapena, Bayamon, PR, Luis Lugo–Emmanuelli, Fajardo, PR, Jorge Maldonado–Ríos, Bayamon, PR, for Defendants.

## ORDER

CEREZO, District Judge.

During the consideration of the jurisdictional challenge, the Court, although convinced that there was a jurisdictional basis, adverted that the government's proffer of evidence with regard to milk allegedly adulterated and sold by defendant Robles–Mendoza to Tres Monjitas Dairy posed the potential for a material variance at trial. The concern stemmed from the fact that the government's proffer filed on October 31, 1999 (docket entry 77) at page 3, indicated that "defendant Robles–Mendoza sold the adulterated milk to Tres Monjitas, who sold it to Airport Catering." Attachment E of the government's reply to defendant's Motion to Dismiss for Want of Federal Jurisdiction (docket entry 61) is a table with the basic data concerning the chain of production from dairy farm through destination. The only information provided therein with reference to Robles–Mendoza is that the first purchase of the milk produced at his dairy farm was made by Tres Monjitas who then sold it to Airport Catering and on to American Airlines which put it on flights to Miami and New York.

This is substantially the same information concerning Robles–Mendoza' sale transaction of allegedly adulterated milk to Tres Monjitas which appears at page 3 of the government's proffer.

A reading of the indictment in this case reflects that Mr. Robles–Mendoza is charged in one of the six counts included therein with delivering or causing to be delivered and introducing in interstate commerce adulterated milk, while aided and abetted by others, on or about March 31, 1997 in Puerto Rico. Aside from the date, the name of defendant, and the method of adulteration, this first count, like the other five counts of the indictment, tracks the statutory language of 21 U.S.C. §§ 331(a), 333(a)(2), without providing any other specific information. Said specific information is included under general allegations in the first three and a half pages of the indictment. The first two of these allegations explain in detail the relationship between the milk industry regulatory office and milk producers and the process by which milk is produced and distributed to consumers in Puerto Rico, the continental United States and elsewhere, including how the truck drivers hired by the processing plant picked up the milk at the dairy farm. It describes how, before accepting it for delivery to the processing plant, the drivers would perform a series of tests to make a preliminary determination that the milk was unadulterated. Paragraphs 3 through 7 of the indictment identify the persons and the purchasing plant involved in this case. The only processing plant identified is Suiza Dairy, the allegation being that:

3. SUIZA DAIRY, Inc. (hereinafter "Suiza Dairy"), a corporation organized and registered in Puerto Rico, was a milk processor licensed by ORIL. Suiza Dairy hired drivers to collect milk in Suiza Dairy trucks from the cattle and/or dairy farms and transport the milk to its plant for processing, and ultimate distribution to consumers in Puerto Rico and the Continental United States.

Paragraphs 4, 5, 6 and 7 identify the four defendants in this case. Mr. Robles–Mendoza, the dairy farmer, according to general allegation of fact number four, did business as Efraín Robles–Mendoza Dairy and was engaged in the commercial production of milk. Defendants Echevarría, Heger-

Fernández and Pérez–Vázquez are all described as truck drivers hired by Suiza Dairy to collect and transport milk from the dairy farms to the processing plants and "assigned as a regular driver on a route which involved defendant Robles–Mendoza's cattle and/or dairy farm." See allegations 6 and 7 of the indictment.

Mr. Echevarría is charged with milk adulteration in counts 2, 3, and 4 which allegedly occurred on November 19, 20 and 21, 1998 respectively. Mr. Heger–Fernández is charged with the same offense in count 5–the date of the offense being November 27, 1998. Mr. Pérez–Vázquez is charged in the last count of the indictment for allegedly adulterating milk on November 23, 1998.

The grand jury indictment does not mention at all **Tres Monjitas** or any truck driver hired by **Tres Monjitas,** in relation to adulteration of milk. This notwithstanding, the government's proffer filed February 1, 2000 (docket entry 87) in compliance with the January 26, 2000 order, categorically states at page 3 that "[o]n March 31, 1997, the defendant sold raw milk to **Tres Monjitas.**" Immediately following this, the government lists the discovery materials which have been provided to Robles–Mendoza in support of that factual allegation. These include (1) an audiocassette recorded on March 31, 1997 which the government represents evidences defendant requesting an undercover agent who acted as a **Tres Monjitas** truck driver by wearing a Tres Monjitas uniform and logo and who drove a **Tres Monjitas** truck, assistance in adulterating milk, (2) a March 31, 1997 dairy farmer's manifest or ticket evidencing raw milk sold to **Tres Monjitas,** (3) copy of a **Tres Monjitas** check in payment of adulterated milk delivered by defendant on March 31, 1997, (4) copy of invoices evidencing that the March 31, 1997 milk was sold in interstate commerce by Mr. Robles–Mendoza to **Tres Monjitas** who in turn sold it to Airport Catering Services and (5) recordings and cash allegedly evidencing payments by defendant Robles–Mendoza to the undercover agent.

At page 4 of its proffer, the government mentions having disclosed evidence of prior bad acts under Federal Rules of Evidence 404(b) allegedly showing the sale of adulterated milk by defendant Roblesmendoza to Tres Monjitas on other occasions.

The United States states at page 11 of its proffer that the defendant "is aware that there are two processing plants in Puerto Rico, to wit: Suiza Dairy and Tres Monjitas," that **"he sold adulterated milk to both"** and that he **"well knew that on March 31, 1997, he was selling milk to Tres Monjitas' processing plant."** It refers to the discovery provided as confirming these facts. The difficulty with this approach is that, aside from violating the presumption of innocence with statements such as "he well knew he was selling adulterated milk to Suiza Dairy," it disregards the fact that no evidence supporting Count One was presented to the indicting grand jury. Although this situation would most probably lead to a material variance at trial, the Court's principal concern at this pretrial stage of the case is that the grand jury made no probable cause determination on the factual scenario, brought forth by the government in its discovery listings, to wit, allegations of adulteration of milk produced by defendant Robles–Mendoza and sold by him to Tres Monjitas on March 31, 1997. The factual allegations concerning the March 31, 1997 event involve a different processing plant and a different set of actors, beyond Robles–Mendoza himself, than those identified in the general allegations involving the sale of adulterated milk by this defendant to Suiza Dairy, aided and abetted by Suiza Dairy truck drivers.

The more important issue then is not whether the defendant will be confronted with a material variance of the indictment **at trial,** a situation ordinarily discussed in the context of the existence of prejudice or surprise. Rather, since there was **no** evi-

dence before the grand jury on the sale of adulterated milk by defendant to Tres Monjitas through an undercover agent posing as a Tres Monjitas truck driver on March 31, 1997, and, since this compels the conclusion that the grand jury could not have made any probable cause determination as to this specific factual scenario, the Court must determine whether pretrial discovery regarding these factual allegations substitute for the grand jury's lack of consideration of any such evidence.

Given the undisputed fact that the general allegations of the indictment involving all four defendants, Suiza Dairy and the Suiza Dairy truck drivers are related solely to remaining counts 2 through 6 and that the **only** information on defendant Robles–Mendoza's involvement in the sale of adulterated milk to **Tres Monjitas** was not presented to the indicting grand jury, allowing Count One to stand would be a violation of Federal Rule of Criminal Procedure 7(a). The relevant part of said rule provides that "... an offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information...."

Defendant has a constitutional right to be proceeded against by indictment. The circumstances set forth above show that this defendant, although proceeded against by indictment in the single count in which he is charged, did not have the benefit of the grand jury's consideration of the only evidence relevant to this count in its probable cause determination. There is no representation in the proffer that any of the discovery material relevant to the March 31, 1997 count was ever submitted to the grand jury. There is no indication in the indictment itself that any evidence other than the Suiza Dairy related proof, which is not relevant to Count One, was considered by the grand jurors. Count One piggybacked its way into the Indictment on the unrelated evidence supporting the remaining counts.

In sum, the United States must cure the error in which it incurred before the grand jury when it submitted the "Suiza Dairy" processing plant/"Suiza Dairy" truck drivers proof as evidence across the board for all six counts when in reality said proof pertained only to the last five and no factual support was provided for the first count. Confirmation by discovery, as the government claims exists in this case, is no substitute for the grand jury's determination of probable cause upon its own evaluation of the evidence presented in support of the offense allegedly committed.

For the reasons stated Count One of the indictment is DISMISSED, without prejudice of resubmitting the case to the grand jury in order to allow the charging body to give due consideration to the evidence that the government may have to support said count. A term of thirty (30) days after notice allowed for the government to act accordingly.

SO ORDERED.